# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| NIPPONKOA INSURANCE CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:08-CV-976 CAS |
| | ) | |
| TOWNE AIR FREIGHT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Towne Air Freight, LLC's motion for summary judgment. Plaintiff has filed an opposition to the motion, and defendant has replied. For the following reasons, the Court will deny defendant's motion.

## I. Background

On February 28, 2007, in Whiteside County, Illinois, defendant's truck driver dozed off at the wheel, lost control of his truck, and ended up overturned in a ditch. In the truck was a shipment of IBM computer equipment, invoiced at a value of more than $1.3 million. After the crash, the computer equipment was loaded onto another truck and transported to the Chicago area for eventual transport to Japan. Because it claims the computer equipment was a total loss, plaintiff paid its insured, IBM, and brought suit against defendant for breach of contract and tort, seeking more than $1.75 million in damages. Defendant has filed for summary judgment, arguing among other things that the Carmack Amendment preempts all of plaintiff's claims or, in the alternative, that it properly limited its liability to 50 cents per pound or $1,824.00.

## II. Summary Judgment Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v.

Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

### III.    Facts

Plaintiff NipponKoa Insurance Company, Ltd. ("plaintiff") insured a shipment of computer equipment owned by IBM Corporation ("IBM") for transport from Wichita, Kansas to Japan.[1] The commercial invoice price of the computer equipment was $1,389,855.21. IBM's agent, Nippon Express USA, Inc. ("Nippon Express"), a freight forwarder, was responsible for arranging for the transportation of the goods. IBM placed its order for transportation service for the shipment with Nippon Express, and Nippon Express then arranged for the trucking companies to handle the ground move to the Chicago area, from where the equipment would be flown to Japan.

Nippon Express hired ACI Motor Freight to pick up the shipment of IBM computers from Wichita, Kansas and bring it to defendant Towne Air Freight's ("defendant" or "Towne") Kansas City, Missouri terminal. Nippon Express hired Towne to transport the shipment by truck from Kansas City, Missouri to Nippon Express' facility in Bensenville, Illinois, which is near Chicago.

Upon receiving the shipment from ACI at its Kansas City dock, Towne issued its freight bill for the shipment. Plaintiff refers to this document as Towne's "bill of lading." Towne's freight bill

---

[1]The Nippon Express airway receipts reflect that IBM requested transportation of computer equipment from St. Louis, MO USA to Narita International Airport in Tokyo, Japan. Although both parties agree that this shipment went from Wichita, Kansas to Kansas City, Missouri to the Chicago area, neither party has explained why the airway receipts reflect transportation from St. Louis, Missouri. It is undisputed that this shipment did not travel through St. Louis, Missouri.

for this shipment states: "RECEIVED IN GOOD CONDITION EXCEPT AS NOTED. (LIABILITY OF TOWNE AIR FREIGHT IS LIMITED TO ITS GOVERNING TARIFFS.)." The computer equipment was loaded into a linehaul trailer at Towne's Kansas City terminal along with other shipments headed for the Chicago area.

While in route, somewhere in Whiteside County, Illinois, Towne's truck driver lost control of the truck and crashed it into a ditch. The shipments were off-loaded and reloaded onto another Towne trailer to complete transport of the shipments. Towne delivered the IBM shipment to Nippon Express in Bensenville, Illinois on March 3, 2007, at which time the receiver made hand-written notations on Towne's freight bill: "10 crushed, 4 torn, 4 dents, 14 slightly crushed."

On March 14, 2007, Towne received from Nippon Express a Notice of Claim. The Notice stated, "We hereby declare that we reserve the right to file a claim with you for this damage when the details and amount of damage are ascertained." On February 25, 2008, Towne received a letter from plaintiff's lawyers demanding payment of $1,494,407.00.

**IV.   Discussion**

  A. The Carmack Amendment to the ICCTA, 49 U.S.C. § 14706

Defendant asserts that plaintiff's claims are governed exclusively by the Carmack Amendment to the ICCTA, 49 U.S.C. § 14706, which provides the exclusive remedy for shippers or owners of goods lost or damaged in interstate commerce against motor carriers or freight forwarders. Because plaintiff has not pleaded a claim under the Carmack Amendment, defendant moves to dismiss all plaintiff's claims for damages because they are preempted by the Carmack Amendment. Plaintiff disagrees, and states that under the Carmack Amendment's motor carrier transportation exemptions section, 49 U.S.C. § 13506(a)(8)(B), the Carmack Amendment explicitly excludes motor

4

transportation that "has been or will be transported by an air carrier or . . . by a foreign air carrier." Because it is undisputed that this shipment was to include transport by a foreign air carrier to Japan, plaintiff argues this shipment is not covered by the Carmack Amendment and the Court should properly apply federal common law.

The Carmack Amendment imposes liability on motor carriers and freight forwarders that cause loss or injury to property. 49 U.S.C. § 14706(a)(1). Under this section, defendant is subject to liability for any actual loss or injury to property it causes because it is a common motor carrier subject to jurisdiction of the Secretary of Transportation. Another statute, however, exempts from liability certain ground transportation of property also involving air transportation. See 49 U.S.C. § 13506(a)(8)(B). Section 13506(a)(8)(B) exempts from the Secretary of Transportation's jurisdiction, "transportation of property (including baggage) by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, has been or will be transported by an air carrier or . . . by a foreign air carrier." 49 U.S.C. § 13506(a)(8)(B); see also Arkwright-Boston Mfrs. Mut. Ins. Co. v. Great Western Airlines, Inc., 767 F.2d 425, 428 (8th Cir. 1984).

Neither party disputes that this shipment of computer equipment by truck to the Chicago area was to be followed by air transport to Japan. The question is whether the transport by truck was part of the "continuous movement" of the shipment or whether the ground leg of the trip was a discrete shipment in itself. Although it did not mention the air carriage exception to the Carmack Amendment in its initial brief, in its reply brief Towne states that it was not a party to any through air bill of lading and was not a party to the IBM/Nippon Express Master Agreement. It states that its agreement with Nippon Express was only to provide motor transportation between Kansas City and Bensenville,

Illinois. Towne cites no case law for its proposition that it needs to be a party to an agreement involving air transportation or that it needs notice that the subsequent transport of the shipment is via air for the air carriage exception to apply.[2] The statute does not require any notice to the motor carrier that the shipment involves subsequent transportation by an air carrier, nor does it require that the ground transporter be party to a through air bill of lading. Although the statute does not define "continuous movement" and little case law exists, two cases are instructive: Georgia Textile Machinery, Inc. v. Federal Express Corp., 556 S.E.2d 845 (Ga. App. 2001) and Shorts v. United Parcel Serv., 1999 WL 118791 (N.D. Tex. Feb. 25, 1999).

In Georgia Textile Machinery, the court relied upon rulings by the former Interstate Commerce Commission and court decisions that considered whether property was transported as part of a continuous movement under identical language of former 49 U.S.C. § 10526(a)(8)(B). Id. at 849. The court found that the test used to determine whether the shipment was in continuous movement "is the intent of the shipper at the start of the transportation." Id. "The intent of the shipper is ascertained from all the facts and circumstances surrounding the transportation, e.g., the presence of common incidents of through carriage such as through billing, uninterrupted movement, continuous possession by the carrier, or unbroken bulk." In the absence of such "incidents of through carriage," the court found that continuous movement can be found "where it is admitted that a shipment made to the ultimate destination had at all times been so intended." Id. at 849-50.

In Shorts, the court held that defendant UPS was not subject to liability under the Carmack Amendment for any loss or misdelivery of a 2nd Day Air package. It found that UPS's shipments

---

[2]Towne's freight bill reflects that the address for delivery of the shipment was "NIPPON EXP ORD (AIR)." Based on this notation, it appears that Towne either knew or should have know that the subsequent transport of the shipment would be via air.

6

of 2nd Day Air deliveries, which involve both ground and air transportation by three affiliated companies, are part of a continuous movement involving prior or subsequent transportation by an air carrier. Shorts, 1999 WL 118791 at *4. With respect to Mr. Shorts' shipment, the court found that the ground carrier (UPS) performed all the services as an agent of and on behalf of the forwarding agent (UPS Air). It found that because the ground carrier was transporting the package as part of a continuous movement of the package involving prior or subsequent transportation by an air carrier, the ground transportation was exempted from the Carmack Amendment. Id. at *4.

Like the state courts in Georgia Textile Machinery and Shorts, the Court finds that Towne's motor transportation of the shipment was part of a continuous movement of the computer equipment that involved subsequent transportation by an air carrier. Thus the Carmack Amendment is not applicable to this case, and federal common law controls. The intent of IBM at the start of the transportation was for the shipment of computer equipment to move through ultimately to IBM Japan. The transportation by motor vehicle was part of this continuous movement. IBM placed its order for transportation service for the shipment with Nippon Express, and Nippon Express then arranged for the trucking companies to handle the ground move to the Chicago area. Nippon Express hired ACI Motor Freight to pick up the shipment from Wichita, Kansas and bring it to Towne's Kansas City, Missouri terminal. Nippon Express hired Towne to then transport the shipment by truck to Nippon Express' facility in Bensenville, Illinois, where it would be shipped via air to Japan. Nippon Express issued airway receipts (or air waybills) for the shipment, showing through shipment from the United States to Japan. Nothing in the record indicates the shipment was ever meant to be unpackaged and re-packaged, nor that the movement was ever intended to be interrupted. As courts have recognized, delivery of goods is often a multi-step process involving temporary interruptions.

7

The simple fact that one step in the delivery of the IBM goods involved ground transportation does not change the character of the movement. The shipment was part of a continuous movement involving subsequent air transport, and is therefore exempt from the provisions of the Carmack Amendment.

B. <u>Plaintiff's Prima Facie Case</u>

Both sides agree that to establish a prima facie case, plaintiff must show (1) delivery of the goods to the carrier in good condition; (2) arrival at destination in damaged condition; and (3) the amount of damages. Def. Mem. at 12 (citing <u>Continental Grain Co. v. Frank Steitzinger Storage, Inc.</u>, 837 F.2d 836, 839 (8th Cir. 1988)); Pl. Resp. at 15 (citing same). Towne argues that plaintiff cannot prove its prima facie case because it cannot prove the damaged condition of the goods at the destination and cannot prove the amount of actual damages. It states that although some of the 35 cartons of computer equipment showed exterior evidence of damage when delivered to Nippon Express in Bensenville, the packages were not opened or inspected in Bensenville. Therefore, defendant argues that plaintiff has no admissible evidence of damage at destination. For its part, plaintiff argues that Towne has not denied that the computers suffered some damage, and Towne's arguments concerning the condition of the goods at arrival go to the extent of the damage attributable to Towne's negligence, which is not appropriately decided on summary judgment.

The Court finds there are genuine issues of material fact that preclude the entry of summary judgment on the issue of whether plaintiff can prove its prima facie case, including but not limited to the condition of goods at arrival in Bensenville and the amount of damages attributable to Towne's negligence. The undisputed evidence shows that Towne's driver dozed off at the wheel, lost control of the truck, and crashed it into a ditch. The shipment was then off-loaded and reloaded onto another

Towne truck. The receiver of the shipment at Nippon Express in Bensenville made hand-written notations regarding the crushed, torn, and dented condition of the packages. Towne does not dispute that the shipment arrived in damaged condition. Instead, it argues either that the damages were cosmetic damages to the exterior cartons and packaging materials or that plaintiff cannot prove the extent of its damages. The amount of damage is an issue of fact for the jury. As a result, defendant's motion for summary judgment as to plaintiff's prima facie case will be denied.

    C.    <u>Limitation of Liability</u>

Although the parties differ as to whether the Carmack Amendment applies to this case, <u>see</u> Part IV.A., <u>supra</u>, both sides agree that the starting point for determining the applicability of a carrier's limitation of liability is the four-point test or "Hughes Test." Pursuant to this test, to limit its liability, a carrier must (1) maintain an approved tariff; (2) obtain a shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a bill of lading or receipt prior to shipment. <u>See</u> <u>Hughes v. United Van Lines, Inc.</u>, 829 F.2d 1407, 1419-20 (7th Cir. 1987); <u>see</u> <u>also</u> Def. Mem. at 20; Pl. Resp. at 20. The parties disagree as to how much weight to give the four-point test, with defendant citing cases "trend[ing] away from application of the . . . test"—a trend certainly not recognized by plaintiff. <u>Compare</u> Def. Mem. at 21 <u>and</u> Pl. Resp. at n.10.

The Eighth Circuit case most on point is <u>Hampton v. Federal Express Corp.</u>, 917 F.2d 1119, 1121 (8th Cir. 1990). Under federal common law, "[a] common carrier may not exempt itself from liability for its negligence; however, a carrier may limit its liability." <u>Hampton</u>, 917 F.2d at 1121 (internal quotations omitted). In order to limit its liability, the carrier must present the shipper with a reasonable opportunity to declare a value for the shipment above the maximum value set by the

9

carrier, pay an additional fee, and thereby be insured at a higher rate. See id.; Husman Construction Co. v. Purolator Courier Corp., 832 F.2d 459, 461 (8th Cir. 1987). The carrier bears the burden of showing it limited its liability. See Just Take Action, Inc. v. GST (Americas) Inc., 2005 WL 1080597, *7 (D. Minn. May 6, 2005).

Unlike the carriage documents used in Hampton and Husman, which clearly limited the liability of the carrier, here the Towne document, or "freight bill," omits key requirements. The freight bill does not include any blank for the shipper to insert a declared value. Nor does it state a release rate valuation, i.e., that Towne's liability is limited to 50 cents per pound unless a higher value is declared. Dooley Aff., Ex. 5; Pl. Resp. at 22. The only reference to a limitation is a parenthetical sentence over the signature line: "RECEIVED IN GOOD CONDITION EXCEPT AS NOTED. (LIABILITY OF TOWNE AIR FREIGHT IS LIMITED TO ITS GOVERNING TARIFFS.)." Id. Although Towne attempted to incorporate by reference its governing tariff, which is available on-line, courts have held that this "is not equivalent to inclusion of the blank on the document itself." Hillenbrand Indus. Inc. v. Con-Way Transp. Servs., Inc., 2002 WL 1461687, *7 (S.D. Ind. June 19, 2002). Moreover, the reference to the governing tariffs is vague, and is used formulaically on every Towne shipment. See Dooley Aff. at ¶ 17 ("This same notation appears on every one of Towne's freight bills for the thousands of shipments it has handled for Nippon Express (and IBM) over the last twenty-plus years."). The freight bill did not allow the shipper an opportunity to declare a value for the shipment or allow the shipper to pay an additional fee for insurance at a higher rate. Towne cannot meet its burden of showing it limited its liability by referring to its freight bill. The freight bill does not reflect that defendant presented the shipper with a reasonable

opportunity to declare a value more than the maximum value set by the carrier, pay an additional fee, and be insured at a higher rate. See Hampton, 917 F.2d at 1121.

Towne repeatedly states that Nippon Express never identified or informed Towne that the shipment consisted of IBM computers or that Nippon Express wanted to declare any value for the shipment. Dooley Aff. ¶¶ 14, 16, 18, 26. To limit liability, however, Towne bears the burden of showing that it presented the shipper with a reasonable opportunity to declare a value for the shipment, pay an additional fee, and thereby be insured at a higher rate. Towne cannot meet its burden by continually pointing to plaintiff's failure declare a value for the shipment. While a carrier does not need to "explain the option to declare a higher value to the shipper," Husman, 832 F.2d at 461, the Court has not found any case in which merely including a parenthetical statement on a freight bill incorporating the governing tariff (which in this case was not seen by the shipper until after the damaged shipment arrived) and making its tariff and rules available "on request and on Towne's website" meets the carrier's obligation to present the shipper with the opportunity to declare a value for the shipment. This is especially true where, as here, the freight bill contained no standard declared-value blank and was not seen by the shipper until after delivery.

Additionally, as plaintiff points out, Towne violated its own tariff obligations. The provisions of its tariff require that if the shipper declares a value higher than 50 cents per pound, "the declared value or released value must be clearly shown on this carrier's bill of lading . . . and the shipping document must be signed by the shipper." Towne's Motor Freight Tariff, Item 848(c), Ex. 11 at 25. Towne's tariff also calls for a declaration of value on the bill of lading to activate the provision concerning "[e]xcess or extraordinary declared value coverage," which is defined to be a value in excess of $25.00 per pound per piece or $100,000 per shipment. Id. Towne's tariff contemplated

a space for the shipper to declare a value, and also a declaration of value for excess or extraordinary declared value coverage, but the freight bill did not conform to the tariff. See, e.g., Caspe v. AAACON Auto Transport, Inc., 658 F.2d 613, 615-16 (8th Cir. 1981) (finding under the Carmack Amendment that carrier could not limit liability where, among other things, it failed to provide a space for the shipper to declare a value on the agreement).[3]

Towne attempts to rely on its prior course of dealings with Nippon Express and the status of IBM and Nippon Express as sophisticated shippers to cure its failure to issue a bill of lading with the requisite declared value or released rate for this shipment.[4] It relies on case law, however, in which the bill of lading afforded the shipper the reasonable opportunity to choose between two different levels of carrier liability and the shipper did not seek a higher level of carrier liability (Hollingsworth & Vose v. A-P-A Transp. Co., 158 F.3d 617, 621 (1st Cir 1998)) or the applicable bill of lading had a standard declared-value blank and the shipper did not declare a higher value (Schweitzer Aircraft Corp. v. Landstar Ranger, Inc., 114 F. Supp. 2d 199, 203 (W.D.N.Y. 2001)). See also ABN Amro Verzekeringen BV v. Geologistic Am., Inc., 485 F.3d 85, 97-98 (2d Cir. 2007) (finding long-standing written contract between shipper and carrier limiting liability to $50 per shipment was effective regardless of whether bill of lading issued). The facts of these cases are unlike those presented here,

---

[3]Interestingly, Towne has posted on its website a sample bill of lading, or "pro bill." The sample bill of lading includes a "Declared Value" box with a space left blank "$_____". The sample bill of lading also states a release rate valuation: "Towne's liability is limited to 50 cents per pound unless a higher value is declared above. See back for details." James Declaration, Ex. 12. This published bill of lading was not used here.

[4]In its briefing, Towne states multiple times that "had Towne known the shipment was worth $1.5 million, it never would have accepted it for transportation in the first place, due to the extraordinary risk to Towne." See, e.g., Mem. at 7; Def. Facts at ¶ 57. It would seem, however, that if Towne had properly limited its liability, as it claims, it would never have a reason to reject this shipment—the risk would be limited to .50 per pound, or $1,824.00.

where Towne did not afford the shipper a reasonable opportunity to choose between different levels of carrier liability and did not have a declared-value blank on its freight bill. Towne has offered no support for its assertion that a prior course of dealings between a shipper and carrier would modify the requirement that to limit liability the carrier must present the shipper with a reasonable opportunity to declare a value for the shipment, pay an additional fee, and thereby be insured at a higher rate.

Finally, Towne seeks to limit its liability because it argues IBM issued its own bills of lading, adopting the motor carrier's tariff rules and did not declare a value for the shipment on its bills of lading. By there very terms, however, these documents (referred to as "IBM Shipping Receipts" by plaintiff) apply only when there is no applicable contract. See James Decl., Ex. 8. The bills of lading state "RECEIVED, subject to individually determined rates and constraints that have been put upon in writing between carrier and shipper." Id. By their terms, therefore, the bills of lading do not apply when, as here, IBM had a separate contract in place with Nippon Express. Additionally, Towne is not a party to these bills of lading. Moreover, viewing the facts in the light most favorable to plaintiff, these bills of lading or shipping receipts do not direct any carrier to transport any goods. The documents list the goods being shipped, the point of shipment, the carrier (Nippon Express), and the shipment is consigned to Nippon Express. See James Decl., Ex. 8. To the extent Towne attempts to rely upon the Nippon Express airway bills, which is not clear, these airway bills do not extend the limitation of liability to carriers such as Towne. See James Decl. at Ex. 9. And again, these documents have obvious errors, listing the departure city as St. Louis and the route as St. Louis/Chicago/Narita.

Towne has not met its burden of establishing that it limited its liability, and therefore its summary judgment motion will be denied on this point.

### D. Timely Written Claim

Finally, Towne relies on the claim-filing requirements in its tariff, and states plaintiff's notice of claim was not received timely so all relief should be denied. For purposes of expediting the analysis of this claim, the Court will assume for purposes of this section only that the tariff applies. Even assuming Towne's tariff applies, however, the tariff does not require that the notice of the claim filed within nine months of delivery contain a specific claim amount.

Towne's tariff states, in relevant part:

**FILING OF CLAIMS**

(a) All claims for loss, damage or delay to cargo must be filed with this carrier by claimant within nine (9) months after delivery of the property, or in the case of failure to make delivery, within nine (9) months after a reasonable time has elapsed.

(b) Claims for loss, damage or delay to cargo will not be paid voluntarily by this carrier and must be filed in writing with this carrier by the claimant. A communication in writing (1) containing sufficient facts to identify the shipment (or shipments) involved; (2) asserting liability for alleged loss, damage or delay to cargo; and (3) making claim for a specified amount of money shall be considered as sufficient compliance with the requirements of this paragraph.

. . .

(d) Whenever this carrier is presented with a claim for an uncertain amount, it shall determine as nearly as possible the extent, if any, of the loss or damage for which it is responsible. This carrier shall not, however, voluntarily pay a claim under such circumstance unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed by the claimant.

The provisions for filing a claim do not state, as defendant claims, that a damage claim will not be paid unless it is made "in writing (1) containing sufficient facts to identify the shipment . . . (2) asserting liability for the alleged . . . damage . . . and (3) making claim for a specified amount of

money . . . ." Def. Mem. at 15. Instead, the provisions state that a communication in writing containing these three items "shall be considered as sufficient compliance with the requirements of this paragraph." That is, the tariff states only that a claim for a specified amount of money is considered compliant; it does not state that a failure to specify an amount within the nine-month claim period shall not be deemed sufficient compliance.

In fact, the tariff specifically contemplates a situation in which the exact amount of the claim is not known. Paragraph (d) states the provisions for filing a claim when the exact amount of damage is not known. The carrier will not pay the claim until the specific amount is determined, but there is no indication that the specified amount must be determined within the nine-month claim filing period. Finally, if Towne required additional information or documentation in addition to that submitted by plaintiff, the provisions of its tariff instructed it to "notify claimant and request the information required." Tariff at Item 407. Towne never notified IBM or Nipponkoa that it needed more damages information to investigate the claim.

It is undisputed that on March 14, 2007 Towne received from plaintiff a one-page timely written claim titled "NOTICE OF CLAIM." The notice of claim stated: "We hereby declare that we reserve the right to file a claim with you for this damage when the details and amount of damage are ascertained." Def. Facts ¶ 85; Pl. Ex. 14. On February 22, 2008, counsel for plaintiff sent a letter specifying the exact amount of the claim, $1,494,407.00. Assuming for purposes of this section only that Towne's tariff applies, the provisions of the tariff do not specifically require a written claim filed within the nine-month claim period to specify the exact amount of the claim. The Court finds that plaintiff's recovery is not barred by the provisions regarding the filing of a timely written claim.

15

## V. Conclusion

For the foregoing reasons, the Court denies defendant Towne Air Freight's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Towne Air Freight, Inc.'s motion for summary judgment is **DENIED**.  [Doc. 32]

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 7th day of October, 2009.